(79 South. 37)

LOVELESS et al. v. HARDY. (6 Div. 745.)

(Supreme Court of Alabama. May 9, 1918.)

1. ASSAULT AND BATTERY 13 — SELF-DEFENSE.

When an officer, while lawfully arresting a person charged with the commission of a misdemeanor, is resisted by armed force, he is not compelled to retreat, but may use such force as will enable him to overcome the resistance offered him, even to the extent of taking the life of the offender, if he is actually resisting to such an extent as to place the officer in danger of his life or of great bodily harm.

2. WITNESSES 336—IMPEACHMENT—PARTY.

Plaintiff, having testified in his own behalf, was subject to impeachment by testimony as to his general reputation.

3. WITNESSES 405(2)—CONTRADICTION—IMMATERIAL MATTER.

No reversible error was committed in excluding evidence which contradicted plaintiff on an immaterial matter.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Action by Zachery Taylor Hardy against Isaac E. Loveless and another. From judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Reversed and remanded.

Suit by appellee (plaintiff) against appellants (defendants) to recover damages for an assault and battery with a gun, committed by the defendants on the plaintiff September 14, 1915. Said suit resulted in a verdict and judgment for the plaintiff in the sum of $200, from which the defendants prosecute this appeal.

The defendant I. E. Loveless was a constable of precinct 1 in Jefferson county, and had a warrant of arrest for the plain-

tiff, under the name of Johnson, as defendants insist he had represented his name to be. Defendant Loveless deputized the defendant G. N. Clements to go with him to assist in arresting the plaintiff under said warrant. It does not seem to be disputed that the warrant was a valid warrant issued by an authorized officer in said precinct, charging the plaintiff with a misdemeanor, and that the defendants were in the act of making the arrest of plaintiff under this warrant at the time of the injuries complained of.

The testimony for the plaintiff tended to show that he lived in Tuscaloosa county, but had gone to the house of one Evans near Bessemer on September 14, 1915, and at the time the defendants came up, about 7 o'clock in the evening, he was sitting outside of this house, and had fallen asleep; that he was awakened by their searching him, and that they asked him his name; that he thought they were robbers, and were going to kill him; that he whirled around from them, and they shot him in the elbow, and that he kept running, and did not have his arm treated until several days thereafter, when it was necessary to have it amputated, which was done. Plaintiff's evidence further tended to show that defendants did not tell him they had a warrant for him, or that they were arresting him; that they had a gun, and one had a light and also a pistol; that he had no weapon except a pocketknife with one small blade; that he made no resistance nor did he strike the officer, or shoot at them.

A letter was found on the plaintiff, purporting to have been written by one Martha Hardy, addressed to the plaintiff as "father," in which it was stated that he should stay out of the way; that the sheriff was looking for him. This letter was offered in evidence by the defendants after the plaintiff had admitted he had the letter in his pocket, had read it, and knew what it contained, and after he had testified that he did not know that he was wanted on any warrant from Tuscaloosa county. The letter was excluded, and defendants reserved exceptions. The warrant which the defendants had for the arrest of the plaintiff was not, however, the warrant from Tuscaloosa county.

The evidence for the defendants tended to show: That the plaintiff had been seen in that neighborhood begging and loitering around, and had every appearance of being able-bodied. That he came to the house of defendant Clements begging for something to eat, and as he (Clements) came around to the house plaintiff ran, and that he (Clements) saw the plaintiff again at Ed Evans' house. That when he first saw the plaintiff he was sitting in a chair, and as plaintiff saw Clements he ran around the house into the woods, although he (Clements) had said nothing to him. That defendant Clements waited there about five minutes, and plaintiff did not return. After observing such conduct, the defendant Clements swore out a warrant against plaintiff, charging vagrancy. This warrant was turned over to defendant Loveless, who was constable, and who subsequently deputized defendant Clements to go with him to make the arrest. That they saw the plaintiff out in front of Evans' house, sitting in a chair. Plaintiff gave his name as "Johnson," and defendants informed him they had a warrant for him. That in searching plaintiff they discovered a pistol inside of his vest pocket. Plaintiff then struck defendant Clements with both fists, and ran off about 25 feet and fired his pistol. Defendant Clements then fired a shotgun; this defendant testifying:

"I made no attempt to shoot him until after he had shot at me with a pistol. When the pistol was fired, it was pointed right back at us, and the flash came right in our direction. At the time I shot I did not see him, but shot where I saw the flash from the pistol. We did not see any more of him that night, but, searching around in the woods in the direction in which he was going, we found the pistol," which was offered in evidence by the defendants.

The defendant Loveless testified substantially as did the defendant Clements, except that he was behind Clements and was unable to hear all that was said at the time the search was made. The witness further testified that the defendants had made no effort to shoot at the plaintiff until he had shot at them, and that immediately after the plaintiff had fired his pistol, the defendant Clements fired.

The court in its oral charge to the jury, instructing them in regard to the defense set up by the defendants, said:

"They must be free from fault in bringing on the difficulty, and it was their duty to retreat, unless by doing so it would increase their peril, either to life or limb."

Numerous exceptions were reserved to portions of the oral charge of the court, among them the following:

"In protecting themselves, they must be free from fault in bringing on the difficulty," and "in protecting themselves they must be free from fault in bringing on the difficulty, and it was their duty to retreat."

One Phifer, testifying for the defendants, stated that he was a notary public and ex officio justice of the peace in Tuscaloosa county; that he had known the plaintiff for several years; had issued process for him; and that plaintiff had left that county after the issuance of the process, and had not been back. The witness was asked by the defendants if he knew the general reputation of the plaintiff in the community in which he lived, which question he answered in the affirmative. He was then asked, "Was that reputation good or bad?" The plaintiff objected to the question on the grounds that it was immaterial, irrelevant, incompetent, and illegal. The court sustained the objection, and to this ruling of the court the defendants reserved an exception.

Goodwyn & Ross, of Bessemer, for appellants. Bonner & McAdory and Forney Johnston, all of Birmingham, for appellee.

GARDNER, J. On the trial of this cause, the court instructed the jury that it was without dispute the defendants were authorized under a valid warrant to arrest the plaintiff, and the trial of the cause seems to have proceeded throughout upon this assumption by the prosecution and the defense. The defendants insisted that they only resorted to force after the plaintiff had resisted arrest by striking the defendant Clements, whirling from him, and running off about 25 feet and then firing at the defendants with a pistol, which they had found on his person, and that what they did was therefore in self-defense. In instructing the jury upon this theory of the defense, the court charged them that, before the defendants can invoke the doctrine of self-defense in this cause, they must first establish their freedom from fault in bringing on the difficulty, and further charged that they were under a duty to retreat unless by so doing they would increase the peril to themselves. In Birt v. State, 156 Ala. 29, 46 South. 858, is the following quotation taken from the case of Clements v. State, 50 Ala. 119, which is here pertinent:

"In all cases, whether civil or criminal, where persons having authority to arrest or imprison, and using proper means, * * * are resisted in so doing, they may repel force with force, and need not give back; and, if the party making the resistance is unavoidably killed in the struggle, this homicide is justifiable."

In the Birt Case it was further said:

"The doctrine of self-defense has no application in such cases, because it is the duty of the officer to effect the arrest or imprisonment of the offender without the use of unnecessary or improper violence. * * * This duty could not be performed if any element of self-defense was essential to the protection of the officer. He must, to do his duty, become the aggressor, and in no event is he required to retreat before an assailing prisoner."

In Holland v. State, 162 Ala. 5, 50 South. 215, the court said:

"While an officer having a warrant of arrest is justifiable in killing one charged with a felony, if he resist or flees, this rule does not prevail as to arrest of persons charged with misdemeanors. 'When an attempted arrest is for an ordinary misdemeanor or in a civil action, life can only be taken by the officer where the person arrested resists by force, and so endangers the life or person of the officer as to make such killing necessary in self-defense.' Kerr on Homicide, 187; Birt v. State, 156 Ala. 29, 46 So. 858; Clements v. State, 50 Ala. 117. If the circumstances show a willful murder, rather than an attempt to arrest the deceased, the warrant can be of no benefit to the defendant. 21 Cyc. 953, and authorities cited in note 39. On the other hand, if the defendant is armed with a legal warrant, he has the lawful right to enter the premises of the deceased, is under no duty to retreat in case of resistance, and can repel any force used by the deceased, not in excess of what may be necessary to make the arrest or to protect his life or himself from serious bodily harm."

[1] It is recognized as a general rule that in a case of a misdemeanor an officer has no right, except in self-defense, to kill the offender, either in attempting to make an arrest, or in preventing his escape after arrest. Yet when an officer, while lawfully arresting a person charged with the commission of a misdemeanor is resisted by armed force, he is not compelled to retreat, but may use such force as will enable him to overcome the resistance offered him, even to the extent of taking the life of the offender, if he is actually resisting to such an extent as to place the officer in danger of his life or of great bodily harm. 2 R. C. L. 473, and authorities cited in note; State v. Garrett, 84 Am. Dec. 359; note to State v. Smith, 4 Ann. Cas. 758. It was this defense which the defendants here sought to interpose. The charges of the court to the jury, therefore, exceptions to which were reserved, as indicated, were not in accord with this principle. The giving of such instructions constitutes error for which this cause must be reversed.

[2] The evidence for the respective parties was in sharp conflict. The plaintiff testified in his own behalf. The witness Phifer examined by the defendants testified that he knew the general reputation of the plaintiff in the community in which he lived. We think reversible error was committed in the court sustaining the objection of the plaintiff to the question propounded this witness as to whether or not such reputation was good or bad, and this error does not appear to have been subsequently cured. The plaintiff having become a witness in the cause was subject to such impeaching testimony. Brown v. Moon, 196 Ala. 391, 72 South. 29; Kilgore v. State, 124 Ala. 24, 27 South. 4.

[3] While the letter found on the plaintiff contained information as to a warrant from Tuscaloosa county and tended to contradict plaintiff, yet this was not the warrant on which the arrest was attempted to be made, and was therefore immaterial. No reversible error was committed by the court in sustaining the objection to the introduction of such letter in evidence, relating to an immaterial matter.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.